# United States District Court
# District of Massachusetts

COREY S. D. WALKER,
    Plaintiff,

v.                                         CIVIL ACTION NO. 09-11119-RBC[1]

HAROLD W. CLARKE,
    Commissioner of Correction,
PETER ST. AMAND,
    Superintendent, MCI-Cedar Junction,
ROBERT J. ALMEIDA,
REBECCA DONAHUE,
KURT S. DEMOURA,
MICHAEL P. DELAHOYDE,
ADAM M. SPERLICH,
STEPHEN P. FAGAN,
    Defendants.

## *MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT (#20)*

---

[1] With the parties' consent this case has been reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

COLLINGS, U.S.M.J.

## I. Introduction

On June 29, 2009, plaintiff Corey S.D. Walker ("Walker" or "the plaintiff") filed a *pro se* complaint against defendants Harold W. Clarke ("Clarke"), the Commissioner of Correction, Peter St. Amand ("St. Amand"), the Superintendent at MCI-Cedar Junction, Robert J. Almeida ("Almeida"), a disciplinary hearing officer, Rebecca Donahue ("Donahue"), a disciplinary hearing officer, Kurt S. DeMoura ("DeMoura"), Michael P. Delahoyde ("Delahoyde"), Adam M. Sperlich ("Sperlich") and Stephen P. Fagan ("Fagan")(collectively "the defendants"). In his complaint, Walker claims that the defendants violated his due process rights by finding him guilty on offenses charged in two disciplinary reports when they failed to follow the policy set forth in 103 DOC 525.14. (#1 at 5-6[2])

On November 20, 2009, the defendants filed a motion to dismiss, or, in the alternative, for summary judgment, with three attached exhibits. (#20) Thereafter on January 7, 2010, the plaintiff filed a letter/request (#22) which

---

[2] The facts of the complaint are not laid out in numbered paragraphs, so reference is made to page numbers.

the Court, in a February 17, 2010 electronic order, indicated would be treated as Walker's opposition to the dispositive motion. At this juncture, the motion to dismiss stands ready for decision.[3]

## II. The Facts

On February 26, 2009, during a cell shakedown, defendant Fagan, a correction officer at MCI-Cedar Junction, found a "plastic bag containing fermented fruit and juice" in the plaintiff's cell. (#1, Exh. A-4[4]) As a result of this discovery, Fagan issued Walker a disciplinary report ("D-report"), No. 156248, for the offenses of making intoxicants and alcohol or possession of ingredients that are used in making intoxicants and alcohol [2-19], attempting

---

[3] At the Court's request, on August 31, 2010, the defendants filed a copy of the procedure, 103 DOC 525.00, *et seq.*, that was in effect in April 2009, the time of the events at issue. (#28)

[4] Walker has appended numerous exhibits to the complaint which he references in his allegations. These exhibits shall be considered in deciding the dispositive motion:

> As this case comes to us as a motion to dismiss, "'we must take all the factual allegations in the complaint as true.'" *Maldonado v. Fontánes,* 568 F.3d 263, 266 (1st Cir.2009) (quoting *Ashcroft v. Iqbal,* ---U.S. ----, ----, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)). The following facts are based on [plaintiff's] complaint and the extrajudicial claim letter he sent to PRPD Superintendent Pedro Toledo-Dávila ('Toledo'), which was attached to the complaint. *See* Fed. R. Civ. P. 10(c) ('A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.'); *Blackstone Realty LLC v. FDIC,* 244 F.3d 193, 195 n.1 (1st Cir.2001).

*Santana-Castro v. Toledo-Davila,* 579 F.3d 109, 111-112 (1 Cir., 2009).

to commit that same offense [2-29] and receipt or possession of contraband [4-01]. (#1 at 3, Exh. A-4; *See* 103 C.M.R. § 430.24) That same day, February 26, 2009, the plaintiff alleges that he sent a written request to defendant Delahoyde and defendant DeMoura, the disciplinary officer at MCI-Cedar Junction, that certain documentary evidence, physical evidence and witnesses, in particular the reporting staff person, be produced at his disciplinary hearing. (#1 at 4; #20, Exh. A at 8-9[5])

The disciplinary hearing on D-report No. 156248 was held on March 12, 2009, and the plaintiff pled not guilty. (#1 at 3; #20, Exh. A at 2) Walker's requests for documentary and physical evidence, including videotapes, were denied because no such evidence existed except a photo of the bag removed from his cell and the disciplinary report, both of which were produced to him. (#1 at 4; #20, Exh. A at 6-7, 10) The only witnesses at the hearing were

---

[5]

Walker has not appended these requests to his complaint, but the defendants have submitted them as part of the certified copies of the records regarding the plaintiff's D-report No. 156248. The First Circuit has held "that '[w]hen ... a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'" *Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1 Cir.) (quoting *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16-17 (1 Cir., 1998))(further citations omitted), *cert. denied*, 129 S.Ct. 500 (2008). The certified copies of the records regarding Walker's two D-reports fall within this category of documents.

Fagan, the correction officer who wrote the D-report, and Walker. (#1 at 4-5[6]) In his defense, the plaintiff argued that neither he nor the alleged contraband was tested in accordance with the policy/procedure set forth in 103 DOC 525.14. (#1 at 5; #20, Exh. A at 11) In his testimony, Fagan verified the facts in D-report No. 156248 as being an accurate account of the incident, verified the photo as being a photo of the bag that he removed from Walker's cell, and stated that, to his knowledge, the contents of the bag had not been tested. (#1 at 5; #20, Exh. A at 11)

The disciplinary hearing officer, defendant Donahue, determined that Fagan's written D-report No. 156248, his testimony at the disciplinary hearing and the photo of the bag taken from the plaintiff's cell outweighed Walker's testimony, and so found the plaintiff guilty of the charge of making intoxicants and alcohol or possession of ingredients that are used in making intoxicants and alcohol [2-19]. (#1 at 3-5) The other two offenses were dismissed as duplicative. (#1 at 3; #20, Exh. A at 12) Walker was sanctioned by the imposition of restitution in the amount of $540.00 which caused the plaintiff "the loss of visits, t.v., radio, phone and [his] account to be frozen." (#1 at 4;

---

[6] The reporting staff person, i.e., Fagan, was the only witness requested by Walker. (#20, Exh. A at 8)

#20, Exh. A at 12)

The plaintiff contends that defendant Donahue relied "solely on the hearsay testimony of the reporting officer" such that her finding of guilt was not based upon "information [that] was reliable and credible." (#1 at 5)  The crux of Walker's complaint is that Fagan's testimony was "only hearsay" and so provided an insufficient predicate upon which to find him guilty of the offense of making intoxicants and alcohol or possession of ingredients that are used in making intoxicants and alcohol [2-19] because the contents of the bag found in his cell were not tested in accordance with 103 DOC 525.14. (#1 at 5, Exh. A-5)

On April 6, 2009, when searching the plaintiff's cell, defendant Sperlich, a correction officer at MCI-Cedar Junction, found "a large, clear plastic trash bag hidden in [Walker's] coat...[that] contained approximately 6-8 ounces of an unknown fluid that had an odor which is consistent of (sic) fermented fruits and/or juices." (#1, Exh. A-1)  As a result, Walker was issued a D-report, No. 159434, charging eight offenses:  making intoxicants and alcohol or possession of ingredients that are used in making intoxicants and alcohol [2-19]; attempting to commit that same offense [2-29]; unauthorized possession of any alcoholic or intoxicating beverage [3-03]; attempting to commit that same

offense [3-29]; receipt or possession of contraband [4-01]; misuse or waste of issued supplies, services, or property [4-08]; violating any department rule or regulation [4-11]; and attempting to commit that same offense [4-15]. (#1, Exh. A-1)  The plaintiff alleges that on the day he received the D-report from Sperlich, he sent a written request to defendants Delahoyde and DeMoura that certain documentary evidence, i.e., videotapes, physical evidence, i.e., all test results on, and photos of, the alleged substance, and witnesses, specifically, the reporting staff person, be produced at his disciplinary hearing. (#1 at 4; #20, Exh. B at 5-6)

Walker's disciplinary hearing with respect to D-report No. 159434 was held on April 27, 2009. (#1 at 3; #20, Exh. B at 9) A copy of a photo of the "fermented substance trash bag" was produced to the plaintiff, but all other requests for evidence, to wit, videotape and substance testing results, were denied as non–existent. (#1 at 4 and Exh. A-2; #20, Exh. B at 7)  The sole witnesses at the hearing were the plaintiff and Sperlich.[7] (#1 at 4-5; #20, Exh. B at 9)

Walker pled not guilty to D-report No. 159434 at the disciplinary hearing.

---

[7] The reporting staff person, i.e., Sperlich, was the only witness requested by Walker. (#20, Exh. B at 5)

(#1 at 3 and Exh. A-3; #20, Exh. B at 9)  The plaintiff testified in his own defense that "[t]he bag was empty." (#1, Exh. A-3; #20, Exh. B at 9)  Sperlich testified that he "did a cell search and found it in his coat.  There was a bag with a sock in it.  In the sock was mash.  At the bottom of the bag was a little liquid." (#1, Exh. A-3; #20, Exh. B at 9)  The hearing officer, defendant Almeida, found Walker guilty of the charge of making intoxicants and alcohol or possession of ingredients that are used in making intoxicants and alcohol [2-19]. (#1 at 4 and Exh. A-3; #20, Exh. B at 10)  Almeida's Statement of Evidence Relied Upon To Support Findings is as follows: "Inmate's oral statement was reviewed.  However, it failed to outweigh the reporting officer's written report and oral testimony along with the photographic evidence.  Inmate is guilty of charge 2-19." (#1 at 3 and Exh. A-3; #20, Exh. B at 10)  A sanction of $540.00 restitution was imposed and was "intended as a means of educating this inmate as to the consequence of his actions and to hopefully act as an adequate future deterrent." (#1 at 3-4 and Exh. A-3; #20, Exh. B at 10)  This monetary sanction caused the plaintiff "the loss of visits, t.v., radio, phone and [his] account to be frozen." (#1 at 4)

Walker's argument with respect the disciplinary hearing on D-report No. 159434 is that Almeida relied "solely on the hearsay testimony of the reporting

officer" such that his finding of guilt was not based upon "information [that] was reliable and credible." (#1 at 5)  The crux of Walker's complaint is that Sperlich's testimony was "only hearsay" and so provided an insufficient predicate upon which to find him guilty of the offense of making intoxicants and alcohol or possession of ingredients that are used in making intoxicants and alcohol [2-19] because the contents of the bag found in his cell were not tested in accordance with 103 DOC 525.14. (#1 at 5)

### III. The Motion to Dismiss Standard

A motion to dismiss brought under Rule 12(b)(6), Fed. R. Civ. P., requires the court to "accept[] as true all well-pleaded facts in the complaint and draw[] all reasonable inferences in the plaintiffs' favor." *Sutliffe v. Epping School Dist.*, 584 F.3d 314, 325 (1 Cir., 2009)(citation omitted).  A party's Rule 12(b)(6) motion to dismiss challenges the ability of an opponent's complaint to state a claim.  The Supreme Court in *Bell Atlantic* adopted the view that the complaint must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(citation omitted).  Thus, the factual allegations in the complaint must be specific enough to cross "the line from conceivable to plausible." *Bell Atlantic*, 550 U.S. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* - U.S. -, 129 S.Ct. 1937, 1949 (2009)(citation omitted). "Determining whether a complaint states a plausible claim for relief [is]…a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950 (citation omitted). A court does not have to accept as true allegations in a complaint that are legal conclusions. *Iqbal,* 129 S.Ct. at 1949. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 129 S.Ct. at 1950.

## *IV. Discussion*

A threshold issue shall be dealt with summarily. Walker alleges that this action is in the nature of certiorari under Mass. Gen. L. c. 249 § 4. Section 4 provides, in part, that:

> A civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought in the supreme judicial or superior court or, if the matter involves any right, title or interest in land, or arises

> under or involves the subdivision control law, the zoning act or municipal zoning, or subdivision ordinances, by-laws or regulations, in the land court or, if the matter involves fence viewers, in the district court.

Mass. Gen. L. c. 249 § 4.

As the text makes plain, by its terms that statutory provision relates to a judicial review that may be undertaken by the *state* court, not the federal court.

Next, even assuming *arguendo* that a failure by the defendants to follow the policy/procedure set forth in 103 DOC 525.14 would give rise to a constitutional due process violation[8], the allegations of the plaintiff's complaint establish that no such failure has occurred.  Walker complains that he was

---

[8]

It is not clear that this assumption would be correct:

> Following *Wolff* [*v. McDonnell*, 418 U.S. 539 (1974)], we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, *e.g., Vitek* [*v. Jones*]*,* 445 U.S. [480], 493, 100 S.Ct.[1254], 1263-1264 [(1980)] (transfer to mental hospital), and *Washington* [*v. Harper*]*,* 494 U.S. [210], 221-222, 110 S.Ct. [1028], 1036-1037 [(1990)] (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483-484 (1995).

denied due process because the hearing officers relied on hearsay evidence, i.e., the correction officers' D-reports and testimony, which was not supported by actual testing of the alleged contraband as required by 103 DOC 525.14.

It is true that 103 DOC 525.14 details a substance identification and testing procedure. However, with respect to alcohol/intoxicants, the policy provides as follows:

> 525.14   <u>Substance Identification and Testing</u>
>
> In the event a substance is found that is believed to be or contain alcohol, illegal controlled substances, unauthorized prescribed medications, or other drug or illicit substance, the substance may be screened using a narcotic field test kit in an attempt to identify the substance, or in the case of alcohol/intoxicants, a urine/oral fluid alcohol test or breathalyzer (in passive mode) may be used.
>
> *****
>
> B.  Field Testing/Screening
>
> *****
>
> 5. A substance believed to be or contain alcohol/intoxicants may be screened using a urine/oral fluid alcohol test, or use a breathalyzer in passive mode for evaluation purposes. The appropriate collection procedures shall be adhered to for the specific screening methodology implemented.

> a. The presence of the ingredients used for making alcohol/intoxicants is in itself a violation, regardless whether any alcohol substance exists. The substance does not need to be sent out for laboratory confirmation testing or identification.

103 DOC 525.14(B)(5)(a).

In D-report No. 156248, Fagan wrote that "he found a plastic bag with fermented fruit and juice" in Walker's cell. (#1, Exh. A-4) At the disciplinary hearing on D-report No. 159434, Sperlich testified that he found "a bag with a sock in it [in plaintiff's coat in his cell]. In the sock was mash." (#1, Exh. A-3)[9] The fermented fruit and the sock with the mash constitute "ingredients used for making alcohol/intoxicants," the possession of which is a violation of 2-19 in itself, and "[t]he substance does not need to be sent out for laboratory confirmation testing or identification."[10] Thus, to the extent that Walker has attempted to allege a federal constitutional due process claim premised on a

---

[9] Walker's allegation notwithstanding, neither of these statements is hearsay given that each of the correction officers testified about matters of which he had personal knowledge.

[10] It is also noted that unlike other sections of 103 DOC 525.14, the section concerning the screening of alcohol/intoxicants uses permissive language, i.e., "may be screened," rather than precatory language, i.e., "shall be screened." Compare 103 DOC 525.14(B)(5) with 103 DOC 525.14(B)(4).

13

purported violation of 103 DOC 525.14, the plaintiff's claim must fail.

Third, Walker was charged with, and found guilty of, violation of 2-19 in D-report No. 156248 and in D-report No. 159434. These were clearly separate offenses, having occurred in late February and early April of 2009, respectively. The plaintiff argues in his opposition that, pursuant to the policy set forth in 103 DOC 525, he should only have been required to pay $540.00 once, not $540.00 for each guilty finding on the two D-reports. In other words, Walker is not challenging the fact that restitution may be imposed as a sanction or the amount of the sanction, i.e., $540.00[11], but only the fact that restitution was imposed on each of the two different guilty findings at issue.

Section 525.08, entitled Disciplinary Sanctions and Mandatory Testing Requirements, provides, in part, that "disciplinary procedures shall be implemented in accordance with 103 CMR 430.00...and 103 CMR 431...when any of the following events occur:...7. An inmate...is in possession of alcohol or other...ingredients...used in making intoxicants or alcohol." 103 DOC 525.08(A)(7). That section further provides that "[a]ll guilty findings shall result in the inmate's placement on mandatory substance abuse monitoring

---

[11] The plaintiff does contend that the doubling of the sanction to $1080.00 is unconstitutional, so in that sense he contests the amount of the restitution.

(SDU Status) for one (1) year (first offense), two (2) years (second offense) or three (3) years (third offense or greater), with a single mandated hair test conducted quarterly at the inmate's expense." 103 DOC 525.08(E). Nothing in 103 DOC 525 suggests that an inmate may only have a single restitution sanction imposed despite multiple guilty findings on separate offenses.

The Code of Massachusetts Regulations, as referenced in 103 DOC 525.08(A)(7), provides that sanctions for **each** Category 2 offense include, *inter alia*,

> [r]estitution, including, if applicable, any medical treatment assessment under M.G.L. c. 124, § 1(s)[12]....[n]o more than one sanction shall be imposed

---

[12]

This statute provides:

> In addition to exercising the powers and performing the duties which are otherwise given him by law, the commissioner of correction, in this chapter called the commissioner, shall:
>
> *****
>
> (s) adopt policies and procedures establishing reasonable medical and health service fees for the medical services that are provided to inmates at any state jail or correctional facility. Except as otherwise provided, the commissioner may charge each inmate a reasonable fee for any medical and mental health services provided, including prescriptions, medication, or prosthetic devices. The fee shall be deducted from the inmate's account as provided for in section 48A of chapter 127. The commissioner shall exempt the following inmates from payment of medical and health services fees: medical visits initiated by the medical or mental health staff, consultants, or contract personnel of the department, prisoners determined to be terminally ill, pregnant, or otherwise hospitalized for more than 30 days successively during the term of incarceration and juvenile inmates and inmates who are undergoing follow-up medical treatment for chronic diseases. Notwithstanding any other provision of this section, an inmate

> per offense and no more than four sanctions (in addition to restitution) may be imposed for all offenses arising out of any one or substantially related incidents in which the highest offense(s) alleged is from Category 2.

103 C.M.R. 430.25(2)(e).

Again, it is clear that under this regulation, restitution may be charged for each distinct infraction. Further, 103 C.M.R. 405.17(1) and (2) state that when an inmate is "found guilty through the disciplinary process," that inmate's personal account is frozen in the amount of the ordered restitution and that "[t]he Treasurer may withdraw all funds available in the inmate's personal account until full restitution is made." The Massachusetts Supreme Judicial Court has held "that restitution as a disciplinary sanction is a part of the Commissioner of Correction's (commissioner's) broad grant of statutory authority to maintain prison discipline and that withdrawing funds from [an inmate's] account to

---

> shall not be refused medical treatment for financial reasons. The commissioner shall also establish criteria for reasonable deductions from moneys credited to the inmate's account as provided for in section 48A of chapter 127 to repay the cost of medical treatment for injuries that were self-inflicted or inflicted by the inmate on others.

Mass. Gen. L. c. 124 § 1(s).

satisfy a restitution sanction did not violate any statutorily protected property interest he may have had." *Ciampi v. Commissioner of Correction*, 452 Mass. 162, 163, 892 N.E.2d 270, 272 (2008). *See also Barber v. Wall*, 66 Fed. Appx. 215, 215 (1 Cir., 2003)(per curiam)("the debiting of funds from [an inmate's] account in satisfaction of a properly imposed restitution order does not amount to a taking or other wrongful interference with a property interest.")

In sum, Walker has pointed to nothing in 103 DOC 525 or the regulations which supports his position that he could only be sanctioned with restitution once, and not on multiple occasions consequent to multiple guilty findings on different 2-19 offenses, and so his claim must fail as a matter of law.

Lastly, to the extent that the plaintiff's complaint may be read generally to allege that his constitutional due process rights have been violated, that claim is unavailing. The Supreme Court has held inmates "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974)). Assuming that Walker had a constitutionally protected property interest in the funds in his inmate account, he would be entitled to due process before those funds were taken from him, in this instance, the due process being afforded by the disciplinary hearings. The law mandates that in

order for an inmate disciplinary proceeding to meet the "minimum requirements of procedural due process," the inmate must be given "advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff*, 418 U.S. at 563. In addition the inmate should be afforded the opportunity "to call witnesses and present documentary evidence in his defense when . . . [it is not] unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 566. *See also McGuinness v. Dubois*, 75 F.3d 794, 798-99 (1 Cir., 1996)(per curiam).

The allegations of the plaintiff's complaint together with the exhibits appended thereto establish that Walker got all of the process to which he was due. The plaintiff alleges that he received notice of the claimed violation in the two D-reports: "[t]he charges in the disciplinary report [2-19] accuse the plaintiff of an illegal controlled substance." (#1 at 3; Exh. A-1, A-4) The plaintiff alleges that he requested certain evidence for his defense, and also that the reporting staff person be present as a witness at the each hearing. (#1 at 4; Exh. A-2) Evidence was produced to Walker to the extent that it existed, i.e., photographs and copies of the D-reports, and the reporting staff person, Fagan

or Sperlich, was present and gave a statement at the disciplinary hearings. (#1 at 3-5; Exh. A-2) The plaintiff also made statements in his own defense. (#1 at 3, 5; Exh. A-3) Walker alleges that the disciplinary board issued a written decision including a "statement of the evidence relied upon to support the finding of guilt" and a "statement of reason (sic) for the sanction." (#1 at 3-4; Exh. A-3) Lastly, the plaintiff appealed the guilty finding at least with respect to D-report No. 159434. (#1, Exh. A-5, A-6, A-7, A-8, A-9, A-10, A-11, A-12)

That Walker believes the evidence against him was insufficient to support the guilty findings because it was based on "hearsay" and not on results from testing the contraband simply does not raise a constitutional due process claim. The guilty findings by the disciplinary hearing officers need only be "supported by some evidence in the record," and the D-reports together with the testimony of the reporting staff people, Fagan and Sperlich, and the photos suffice to meet that standard. *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455-456 (1985)("Ascertaining whether this standard [of some evidence] is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the

record that could support the conclusion reached by the disciplinary board.");

*Figueroa v. Vose*, 57 F.3d 1061 (1 Cir., 1995)(Table), 1995 WL 352819, *3 (1 Cir., June 13, 1995).

### V. Conclusion and Order

For all the reasons stated, it is ORDERED that the Defendants' Motion To Dismiss Or In The Alternative, Motion For Summary Judgment (#20) be, and the same hereby is, ALLOWED. Final Judgment shall enter for the defendants.

*/s/ Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

Date: September 23, 2010.